DYK, Circuit Judge,
dissenting from denial of rehearing en banc.
I respectfully dissent from the court’s denial of rehearing en banc in this case. In my view the panel’s decision in this case presents an important issue of broad significance beyond the District of Columbia, warranting our en banc attention. As the panel opinion noted, Biotechnology Indus. Org. v. District of Columbia, 496 F.3d 1362, 1371-72 (Fed.Cir.2007), the District of Columbia stands on the same footing as any state with respect to preemption analysis, and our jurisdiction is exclusive. Therefore, any state law regulating the prices of patented pharmaceutical products would likely be preempted as a result of the panel’s holding. While the D.C. statute in this case appears to be invalid because of its poor drafting, the panel’s opinion suggests that even legitimate price regulation is invalid.
The panel held that the District of Columbia’s Prescription Drug Excessive Pricing Act of 2005 (the “D.C. Act”) is preempted by federal patent law. The D.C. Act prohibits the sale of patented pharmaceuticals at excessive prices, and includes a presumption that prices more than 30% above the prices charged for the same drug in the United Kingdom, Germany, Canada, or Australia are excessive if the drug “is protected by patents or other exclusive marketing rights” in that country. See D.C.Code §§ 28-4552, -4554. The D.C. Act also provides that a pharmaceutical manufacturer can refute the resulting presumption by showing, by a preponderance of the evidence, that the price charged in the District is not excessive in light of several factors:
demonstrated costs of invention, development and production of the prescription drug, global sales and profits to date, consideration of any government funded research that supported the development of the drug, and the impact of price on access to the prescription drug by residents and the government of the District of Columbia.
Id. § 28-4554(b).
The panel agrees that the patent statutes contain no provision expressly preempting state regulation of the price of patented goods. Biotechnology Indus. Org., 496 F.3d at 1372. Under these circumstances, a state law is preempted only if it either (1) regulates in an area where federal regulation is exclusive (so-called *1349 field preemption) or (2) regulates in a way that conflicts with federal policy (so-called conflict preemption). See Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).[1]
In Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989), the Supreme Court held that a state law providing intellectual property protection similar to patent protection was preempted by federal patent law. Id. at 144, 109 S.Ct. 971. In holding the state law preempted, the Court appears to have found both field and conflict preemption.[2] With respect to field preemption, the Supreme Court found that “[t]he patent statute’s careful balance between public right and private monopoly to promote certain creative activity is a ‘scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.’ ” Id. at 167, 109 S.Ct. 971 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447, (1947)).
The problem with the D.C. Act, in my view, is that in a misguided effort to accommodate the patent statutes, it seeks to establish patent policy and thus is subject to field preemption. This is so because the statute requires the D.C. courts (in addressing the defense to excessive pricing) to determine what price is necessary to spur innovation, see D.C.Code § 28-4554(b), a policy determination that Congress surely did not intend to leave to the states. This is not, however, the ground for the panel decision here, which rests on conflict preemption. In my view, a price discrimination provision presents no conflict with the purpose of the federal patent law.
Despite its poor drafting, which inadvertently invades the field of patent policy, the main thrust of the D.C. Act is designed to prevent price discrimination between sales of patented pharmaceutical products in the District and in certain other countries that confer exclusivity. See D.C.Code § 28-4554. In this respect, the D.C. Act reflects the significant public concern about the disparity between drug prices in the United States and other industrialized nations with pharmaceutical patent protection. See generally, U.S. Dep’t of Commerce, Pharmaceutical Price Controls in OECD Countries: Implications for U.S. Consumers, Pricing, Research and Development, and Innovation (2004). The District determined that it was important to regulate this price discrimination to protect public health, due to concern that such price discrimination would deny access to important pharmaceutical products to some District residents who are unable to afford needed medicines. D.C.Code § 28-4551. It is limited to patented drugs because that is the area in which the price discrimination and access issues exist.
To the extent that the D.C. Act is designed to prohibit price discrimination, I see no conflict with federal policy. Clearly, there is no conflict with federal antitrust law, such as the Robinson-Patman Act, which prohibits, under certain circum *1350 stances, “discriminate[ion] in price between different purchasers of commodities of like grade and quality ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly....” 15 U.S.C. § 13(a). The Supreme Court has rejected an argument, under comparable circumstances, that federal price discrimination statutes preempt state price discrimination prohibitions that are in some respects more demanding. Exxon Corp. v. Governor of Md., 437 U.S. 117, 131, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978).
The panel finds no conflict with the antitrust laws; rather, it finds a conflict with the patent laws. The panel concluded that the D.C. Act would “penaliz[e] high prices ... and ... limit[ ] the full exercise of the exclusionary power that derives from a patent ... [thus] re-balanc[ing] the statutory framework of rewards and incentives insofar as it relates to inventive new drugs.” Biotechnology Indus. Org., 496 F.3d at 1374. In other words, the panel finds a conflict between the D.C. Act and a supposed policy of the patent law to allow patent holders to reap maximum profits during the term of the limited monopoly on use of the invention.
This seems to me incorrect. First, the patent laws are not designed to confer immunity from antitrust-type regulation. Congress has not conferred any right on a patentee “to enlarge the scope of the patent monopoly by using the [exclusionary] power it confers to restrain competition” except to the extent that the patent law confers exclusivity. Ill. Tool Works Inc. v. Indep. Ink, Inc., 547 U.S. 28, 37, 126 S.Ct. 1281, 164 L.Ed.2d 26 (2006) (quoting Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 16, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984)); see also Standard Sanitary Mfg. Co. v. United States, 226 U.S. 20, 49, 33 S.Ct. 9, 57 L.Ed. 107 (1912). Thus, for example, sellers of patented products have no special right to fix the price at which the patented products are sold. United States v. Gen. Elec. Co., 272 U.S. 476, 493-94, 47 S.Ct. 192, 71 L.Ed. 362 (1926) (citing cases).
Second, the panel errs in suggesting that the purpose of the patent statutes is to allow a patentee to reap maximum profits during the exclusivity period because “the only limitation on the size of the carrot [the patentee’s profit during the exclusivity period] should be the dictates of the marketplace.” Biotechnology Indus. Org., 496 F.3d at 1372 (quoting King Instruments Corp. v. Perego, 65 F.3d 941, 950 (Fed.Cir.1995)). A patent grant is designed not to allow the patent holder to exploit the grant for the maximum profit that the market will bear, but merely to confer a right of exclusivity. The panel’s assertion to the contrary is inconsistent with longstanding Supreme Court precedent.
It is well established that Congress intended patents to confer upon their holders only “a limited right to exclude others from making, using, or selling a claimed invention for a limited period of time,” but not to “create any affirmative right to make, use, or sell anything.” Leatherman Tool Group Inc. v. Cooper Indus., Inc., 131 F.3d 1011, 1015 (Fed.Cir.1997); see 35 U.S.C. § 154(a). The Supreme Court has frequently applied this principle to conclude that patent law does not preempt or conflict with state and federal statutes regulating or prohibiting the sale of patented products. See, e.g., Webber v. Virginia, 103 U.S. 344, 347-48, 26 L.Ed. 565 (1880) (finding state tax not preempted as applied to sale of patented products); Patterson v. Kentucky, 97 U.S. 501, 24 L.Ed. 1115 (1878) (holding patent rights subordinated to state statute governing safety requirements for lighting oil); see also Standard *1351 Sanitary, 226 U.S. at 49, 33 S.Ct. 9 (holding patent rights do not apply to preempt price-fixing restrictions imposed by the Sherman Act). There is no indication that the Drug Price Competition and Patent Term Restoration Act of 1984 (the “Hatch-Waxman Act”), Pub.L. No. 98-417, 98 Stat. 1585, changed this clearly established legal principle. The legislative history of the Hatch-Waxman Act shows no more than a desire to allow exclusivity because it would result in higher profits. See, e.g., H.R.Rep. No. 98-857, at 17 (1984), U.S.Code Cong. & Admin.News 1984, at p. 2650 (“Patents are designed to promote innovation by providing the right to exclude ... enable[ing] innovators to obtain greater profits than could have been obtained if direct competition existed.”). A law that does nothing to interfere with exclusivity also does nothing to interfere with this purpose. There is not a word in the cited legislative history of the Hatch-Waxman Act suggesting any concern about state price regulation of patented pharmaceutical products. The D.C. Act does not conflict with the purposes of federal patent law because the D.C. Act’s limitations on price discrimination do not in any way interfere with any patent holder’s right to exclusivity. The D.C. Act does not authorize any other person to make, use, or sell any patented products.
Finally, in finding a conflict between price discrimination regulation and federal patent policy, I think that the panel failed to give adequate consideration to the presumption against preemption. See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654-55, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). This presumption is particularly strong with respect to state regulations pursuant to the states’ police power in “fields of traditional state regulation,” such as laws protecting health and safety. Id. at 655, 115 S.Ct. 1671. To overcome the presumption against preemption under these circumstances, the party asserting preemption must demonstrate that “the clear and manifest purpose of Congress” supports preemption. Id. It is clear that, to the extent that the D.C. Act prohibits price discrimination to ensure public access to important medications, it falls within the core of the states’ traditional powers, triggering a strong presumption against preemption. The patent laws were not designed to immunize patent holders from legitimate state regulation in the states’ traditional legislative spheres.
A prohibition on price discrimination may or may not be desirable legislation. But the decision of whether to preempt such legislation is for the Congress to make, and not this court. While I agree that the panel correctly invalidated this particular statute, I dissent from the panel’s apparent holding that the prevention of price discrimination is inconsistent with the clear and manifest purpose of the patent statutes, and I dissent from the denial of en banc review.

. Conflict preemption is also appropriate when “compliance with both federal and state law is in effect physically impossible," La. Public Serv. Comm’n v. Fed. Commc'ns Comm’n, 476 U.S. 355, 368, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986), but there is no allegation that this is the case here.

. The Supreme Court found conflict preemption, concluding that the state law “conflicts with the federal policy 'that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent.’ " Id. at 159-60, 109 S.Ct. 971 (quoting Lear, Inc. v. Adkins, 395 U.S. 653, 668, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969)).